[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 435.]

THE STATE OF OHIO, APPELLEE, *v*. FAUTENBERRY, APPELLANT.

[Cite as *State v. Fautenberry*, 1995-Ohio-209.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 94-722—Submitted March 22, 1995—Decided July 5, 1995.)

APPEAL from the Court of Appeals for Hamilton County, No. C-920734.

_____

{¶ 1} On March 27, 1991, the Grand Jury of Hamilton County, Ohio, returned a five-count indictment against appellant, John Fautenberry. Count One charged Fautenberry with the aggravated murder of Joseph Daron pursuant to R.C. 2903.01, and included two specifications: first, that the murder of Daron was committed while Fautenberry was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of aggravated robbery; and second that Fautenberry possessed a firearm when he committed the murder. Count Two contained a second charge of aggravated murder involving the same victim and included two specifications, namely, that the murder was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons, and that Fautenberry possessed a firearm while committing the offense. The remaining counts charged Fautenberry with aggravated robbery, theft of a motor vehicle, and theft of a credit card.

{¶ 2} On July 23, 1992, a three-judge panel accepted appellant's pleas of no contest to each of the five charges. The panel then considered the admitted facts and evidence, and found appellant guilty as to all counts. The evidence, including the transcripts of several confessions appellant made to the police, established the following.

{¶ 3} During 1990, appellant worked as a cross-country truck driver for a company based in Portland, Oregon. In the early part of November 1990, appellant

informed one of his supervisors that he was quitting his job because of the long hours that were required of him as a truck driver. Thereafter, appellant spent a few days at the Flying J Truck Stop in Portland loading and unloading trucks for money. It was at that time that appellant met Donald Nutley. On one occasion, Nutley, who possessed several firearms, invited appellant to go target shooting with him. The two drove to an area near Mt. Hood, Oregon where they proceeded to fire at bottles until approximately sunset. As they walked back to Nutley's vehicle, appellant fired a single, fatal .38 caliber round into the right side of Nutley's head. Appellant then stole approximately $10,000 in cash from his victim and dumped the body somewhere in the Mt. Hood area. Nutley's body was not located until April 1991.

{¶ 4} In early February 1991, appellant was traveling from Rhode Island to Ohio when he arrived at the Pilot Truck Plaza in Hunterdon County, New Jersey. Appellant, out of money and in need of gasoline in order to continue his trip, met Gary Farmer, who allegedly offered to provide appellant with food and money in exchange for sex. Upon entering Farmer's truck, appellant fatally shot Farmer once in the head with a .22 caliber handgun. Appellant left the body in the truck, stole the victim's wallet, and completed his trip to Cincinnati, Ohio.

{¶ 5} After spending some time in Cincinnati, appellant left his sister's home on February 17, 1991, with no money, no transportation, and, it appears, a desire to travel to Oregon. Appellant began hitchhiking on Interstate 275 when Joseph William Daron, a father of two young children, stopped his vehicle and offered appellant a ride. Appellant explained that he was trying to reach Columbus. Daron offered to drive appellant approximately twenty miles out of his way to a restaurant near the junction of Interstate 71, where appellant believed he might better be able to find a ride to Columbus. Upon reaching the restaurant, appellant exited Daron's vehicle, reached back into the car and shot Daron twice in the right side of his chest with the same .22 caliber handgun that he had used to kill Farmer. After the shooting, appellant drove to a wooded area on the north bank of the Ohio

River, where he threw Daron's body. Appellant then used Daron's vehicle, credit cards, and cash to return to Oregon.

{¶ 6} Appellant arrived in Portland, Oregon, on February 24, 1991, and went to a local bar to meet a friend, Wes Halbrook. Several people, including Christine Guthrie, were invited to join the two men at Halbrook's apartment for a private party. The following day, appellant and Guthrie traveled to Rockaway, Oregon where they spent a few days at the Silver Sands Motel. On the return trip to Portland, appellant drove Guthrie to a wooded area, where appellant claimed they would find something of interest. The two walked into the woods on foot and appellant fired three shots from his Jennings J 22 pistol into the back of Christine Guthrie's head. Appellant then took the victim's bank credit card and address book containing the personal identification number for the credit card, left the body in the woods, and returned to Portland, where he used the credit card to make cash withdrawals. Guthrie's body was not discovered until April 1991.

{¶ 7} In early March 1991, appellant traveled to Juneau, Alaska. While there he spent his time working on a fishing boat and consuming large quantities of alcohol. Appellant met Jefferson Diffee at some point during this period. On March 13, 1991, appellant accompanied Diffee to the latter's apartment, where appellant beat, handcuffed and fatally stabbed Diffee seventeen times. Shortly thereafter, appellant was arrested by the Alaska police. He ultimately pled guilty to the charge of first-degree murder in connection with Diffee's death, and received the maximum sentence available under Alaska state law: ninety-nine years' confinement without parole eligibility.

{¶ 8} Shortly after his arrest by the Alaska police, appellant made four separate statements to various law enforcement officers concerning his involvement with the five murders. Appellant spoke to the police in detail concerning the sites of the murders, the manner in which he had carried out the killings, and the locations where the police could find the victims' bodies.

{¶ 9} After finding appellant guilty of all counts and specifications in connection with Daron's murder, the Hamilton County three-judge panel conducted a mitigation hearing on September 14, 1992. The panel unanimously sentenced Fautenberry to death. Consecutive sentences were imposed for the other offenses, except those which were merged. The court of appeals affirmed appellant's convictions and sentence of death.

{¶ 10} This cause is before the court upon an appeal as of right.

—————————

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Christian J. Schaefer*, Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle* and *Peter Pandilidis*, for appellant.

—————————

**ALICE ROBIE RESNICK, J.**

{¶ 11} In accordance with R.C. 2929.05(A), we are required to undertake a three-part review of appellant's convictions and sentence of death. First, we must review the judgment and consider the issues raised on appeal as we do in all cases. Second, we must independently weigh the evidence disclosed in the record and determine whether the aggravating circumstances the appellant was found guilty of committing outweigh the mitigating factors beyond a reasonable doubt. Finally, we must decide whether the sentence of death is appropriate after considering whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. For the reasons which follow, we affirm the judgments of conviction and uphold the sentence of death.

A

I

{¶ 12} Appellant alleges in his first proposition of law that the three-judge panel committed reversible error by considering victim-impact statements during the penalty phase of the proceedings. The statements included expressions from the victim's family, the victim's employer and the arresting officer concerning the impact of Daron's death on his survivors and the appropriate sentence that should be imposed. Specifically, the victim-impact evidence indicated that each individual who was interviewed wanted appellant to receive "the maximum sentence" available under the law. Appellant argues that these statements make the sentence of death "the product, not of law and reason, but of passion and bias," as prohibited by *State v. Huertas* (1990), 51 Ohio St.3d 22, 553 N.E.2d 1058.

{¶ 13} In *Huertas*, this court concluded that "[e]xpressions of opinion by a witness as to the appropriateness of a particular sentence in a capital case violate the defendant's constitutional right to have the sentencing decision made by the jury and judge." *Id.* at syllabus. The conclusion in *Huertas* hinged upon the holdings of two United States Supreme Court decisions which prohibited the introduction of victim-impact evidence not directly related to the circumstances of the crime. *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.C. 2529, 96 L.Ed.2d 440, and *South Carolina v. Gathers* (1989), 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876. *Booth* and *Gathers* were eventually overruled in *Payne v. Tennessee* (1991), 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed. 2d 720, where the Supreme Court determined, "if a State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Id.* at 827, 115 L.Ed.2d at 736, 111 S.Ct. at 2609.

{¶ 14} Those statements which describe the tragic impact of Daron's murder on his family and friends clearly fall within the scope of victim evidence contemplated by *Payne*. The expressions of opinion relating to the appropriate sentence to be imposed against appellant, however, reach beyond *Payne*.[1] As a result, we find error in the admission of that part of the victim-impact statements which relate to sentencing recommendations. Nevertheless, we are not persuaded that such error warrants reversal.

{¶ 15} A review of the three-judge panel's decision in the instant action fails to demonstrate that the judges contemplated or relied upon the victim-impact evidence which was available to them. "Absent an indication that the panel was influenced by or considered victim impact evidence in arriving at its sentencing decision," the admission of such is not reversible error. *State v. Post* (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759; see also, *State v. Cooey* (1989), 46 Ohio St.3d 20, 33, 544 N.E.2d 895, 912. Furthermore, because we presume that "'*** in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary[,]'" we reject appellant's first proposition of law. Post, 32 Ohio St.3d at 384, 513 N.E.2d at 759, quoting *State v. White* (1968), 15 Ohio St.2d 146, 151, 44 O.O.2d 132, 136, 239 N.E.2d 65, 70.

{¶ 16} At this juncture, we note that our decision in *State v. Loza* (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082, included a limited discussion of victim-impact evidence which, upon further reflection and review, requires some clarification. The appellant's twenty-fifth proposition of law in *Loza* in part challenged statements made by the prosecutor concerning the fact that one of the four murdered victims was a pregnant woman, and that the killing of the four people represented

---

1. We further recognize that while R.C. 2930.13(C)(4), which became effective in October 1994, authorizes a trial court to consider a written or oral statement by the victim as to the victim's recommended sanction for the defendant, similar recommendations by family and friends are not statutorily authorized.

a loss of "many years" of combined potential life expectancy. Loza argued that these statements, made during the penalty phase of the trial, constituted impermissible victim-impact evidence which denied him a fair penalty determination. We rejected this argument, but now offer some additional discussion for doing so.

{¶ 17} While the prosecutor's comments in *Loza* fit within the fairly broad definition of victim-impact evidence contemplated by *Payne*, *supra*, they also represent a recitation of the facts and circumstances surrounding the offense that were introduced during the guilt phase of the trial. True victim-impact evidence, pursuant to the terms of R.C. 2930.13, 2930.14 and 2947.051, shall be considered by the trial court prior to imposing sentence upon a defendant, not during the guilt phase of the proceedings. Evidence relating to the facts attendant to the offense, however, is clearly admissible during the guilt phase. As a result, we find that evidence which depicts *both* the circumstances surrounding the commission of the murder and also the impact of the murder on the victim's family, may be admissible during *both* the guilt and the sentencing phases. For that reason, we decided that the statements made by the prosecutor in *Loza* were properly admitted.

II

{¶ 18} In his second proposition of law, appellant asserts that the trial court relied upon nonstatutory aggravating circumstances to justify the death sentence. Appellant focuses upon the portion of the panel's opinion titled "WEIGHING AGGRAVATING CIRCUMSTANCE [*sic*] AGAINST MITIGATING FACTORS," where the panel, following a discussion of the mitigating factors, stated:

"However, these mitigating factors pale before the simple fact that defendant's actions were plotted, vicious, persistent and utterly callous. Joseph Daron was shot not once, but twice. His belongings including money[,] credit

cards, [B]ible and even his vehicle were stolen by the defendant. Then his body was thrown into a wooded area near the Ohio River.

"The actions of the defendant were contemplated and calculating as he asked Joseph Daron to drive twenty miles out of his way, all the time knowing he would kill Daron and steal his belongings. John Fautenberry's calculation[s] continued after the shooting as he drove to the Ohio River looking for a place to hide Joseph Daron's body."

{¶ 19} Appellant contends that this portion of the trial court's sentencing opinion represents an impermissible conversion of the nature of the crime into nonstatutory aggravating circumstances. We disagree. In its opinion, the panel specifically set forth the statutory aggravating circumstances that had been proven beyond a reasonable doubt: first, that the murder of Joseph Daron was part of a course of conduct involving the purposeful killing of two or more people (R.C. 2929.04[A][5]), and second, that the murder occurred while appellant committed the offense of aggravated robbery (R.C. 2929.04[A][7]). Only then did the trial court turn to a discussion of the facts surrounding the commission of the murder.

{¶ 20} It is well settled that, "[u]nder R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus. See, also, *State v. Smith* (1991), 61 Ohio St.3d 284, 293, 574 N.E.2d 510, 518; *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 305. The trial court in the case at bar clearly understood the difference between statutory aggravating circumstances and additional facts which depicted the nature and circumstances of the murder. Furthermore, it is only by considering both the facts surrounding the crime and also the statutory aggravating circumstances that judges and juries can prevent the implementation of a rigid and

mechanistic sentencing scheme. *State v. Jester* (1987), 32 Ohio St.3d 147, 153, 512 N.E.2d 962, 969.

{¶ 21} Upon thorough review and consideration of the trial court's opinion, we find that the nature and circumstances of the offense were simply utilized to support the trial court's finding that the aggravating circumstances outweighed the mitigating factors. Appellant's second proposition is accordingly overruled.

### III

{¶ 22} Appellant alleges in his third proposition of law that the three-judge panel failed to consider several offered mitigating factors. R.C. 2929.04(B) requires the trial court to consider and weigh against the proven aggravating circumstances the nature and circumstances of the offense, the history, character and background of the offender, and seven mitigating factors, including "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death." Appellant specifically challenges the trial court's conclusion that age (R.C. 2929.04[B][4]), lack of prior criminal record (R.C. 2929.04[B][5]), and cooperation with police (R.C. 2929.04[B][7]) were not mitigating factors in this case.

{¶ 23} Appellant focuses his challenge in part on the claimed difference between the trial court giving little or no weight to a mitigation factor and the trial court finding that a mitigating factor does not exist. In the case at bar, the three-judge panel determined that neither youth nor lack of a prior criminal record existed as a mitigating factor, since appellant was twenty-seven-years old at the time of the murder and had one prior felony conviction for carrying a concealed weapon, in addition to at least one misdemeanor conviction. The trial court's conclusions are consistent with previous decisions of this court. See, *e.g.*, *State v. Campbell* (1994), 69 Ohio St.3d 38, 54, 630 N.E.2d 339, 353 (youth mitigation factor does not apply where defendant is twenty-seven years of age at time of offense); *State v. Brewer* (1990), 48 Ohio St.3d 50, 64, 549 N.E.2d 491, 505 (youth mitigation factor not

established when defendant is twenty-five-years old at time of offense); *State v. Lott*, *supra*, 51 Ohio St.3d 160, 173, 555 N.E.2d 293, 306 (two previous felonies make R.C. 2929.04[B][5] "inapplicable" as a mitigating factor). Clearly both age and prior criminal record were considered in the mitigation process, but they were simply negated by the facts at hand.

{¶ 24} Appellant further claims that the trial court did not properly consider his cooperation with police or his history, character and background. This argument is also without merit. The sentencing opinion specifically mentions the fact that appellant confessed to each of the murders and cooperated with the law enforcement officers. "While R.C. 2929.04(B)(7) evinces the legislature's intent that a defendant in a capital case be given wide latitude to introduce any evidence the defendant considers to be mitigating, this does not mean that the court is necessarily required to accept as mitigating everything offered by the defendant and admitted. The fact that an item of evidence is admissible under R.C. 2929.04(B)(7) does not automatically mean that it must be given any weight." *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus. See, also, *State v. Davis* (1991), 62 Ohio St.3d 326, 346, 581 N.E.2d 1362, 1379. Moreover, this court independently weighs the aggravating circumstances against the mitigating factors of the crime. That review can negate any claim of error in previous reviews. *State v. Lott*, 51 Ohio St.3d at 170, 555 N.E.2d at 304. Appellant's proposition of law is therefore without merit.

IV

**{¶ 25}** In his fourth proposition of law, appellant argues prejudicial error because the sentencing opinion written by the trial court listed all statutory mitigating factors, including those not raised by defense counsel.

**{¶ 26}** In *State v. DePew* (1988), 38 Ohio St.3d 275, 289, 528 N.E.2d 542, 557-558, this court determined that if a defendant chooses to refrain from raising some or all of the mitigating factors available to him under R.C. 2929.04(B), those factors not raised may not be referred to or commented upon by the trial court or prosecution. The trial court's reference to factors not introduced by the defendant, however, does not constitute reversible error. *Id.* at 290, 528 N.E.2d at 558. See, also, *State v. Lorraine* (1993), 66 Ohio St.3d 414, 425, 613 N.E.2d 212, 221. We also presume, unless clearly demonstrated otherwise, that the panel based its decision on only relevant, material, and competent evidence. *State v. Post*, 32 Ohio St.3d at 384, 513 N.E.2d at 759; *State v. White*, *supra*, 15 Ohio St.2d at 151, 44 O.O.2d at 136, 239 N.E.2d at 70. Furthermore, our independent review of the sentence can rectify any sentencing errors that may have occurred. *State v. Lott*, *supra*. Appellant's fourth proposition of law is overruled.

V

**{¶ 27}** In his fifth proposition of law, appellant asserts that the state failed to prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. As we discussed in *State v. Sowell* (1988), 39 Ohio St.3d 322, 334, 530 N.E.2d 1294, 1307, "[t]he 'weighing' procedure *** is not a mere counting process of the number of aggravating circumstances and the number of mitigating factors. It is a reasoned judgment as to which situations require the death sentence and which situations require life imprisonment, based upon the totality of the evidence presented by both parties."

**{¶ 28}** A review of the instant record reveals that the evidence presented was sufficient for the three-judge panel to determine that the aggravating

circumstances outweigh the mitigating factors beyond a reasonable doubt. We address this issue further in Part B of our opinion, *infra*, pursuant to our duty to independently weigh the aggravating circumstances against the mitigating factors. See R.C. 2929.05(A).

## VI

{¶ 29} In his sixth proposition of law, appellant challenges the constitutionality of Ohio's death-penalty statute on several grounds. These arguments have all been previously addressed and rejected by this court. *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568; *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237; *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264. Appellant's proposition of law is therefore overruled.

## VII

{¶ 30} In his final proposition of law, appellant argues that the trial court erred in sentencing him to death because his death sentence is disproportionately severe because no fewer than ten other defendants in the same county were convicted of aggravated murder during the commission of aggravated robbery, but were not capitally prosecuted. This argument has been repeatedly rejected by this court. *State v. Sowell*, *supra*, at 335, 530 N.E.2d at 1308; *State v. Jenkins*, *supra*, at 209, 15 OBR at 350, 473 N.E.2d at 304; *State v. Steffen*, *supra*, at 123-124, 31 OBR at 283-284, 509 N.E.2d at 394-395. For the reasons set forth in those decisions, we adhere to that position today.

## B

{¶ 31} Having completed our examination of the issues raised upon appeal, we must now turn to an independent review of the record as required by R.C. 2929.05, for the purpose of determining whether the mitigating factors present in this case are outweighed by the aggravating circumstances appellant was found guilty of committing.

{¶ 32} Turning first to the aggravating circumstances, the evidence established beyond a reasonable doubt that the murder of Daron was part of a course of conduct involving the purposeful killing of five people (R.C. 2929.04[A][5]), and that the murder occurred while appellant committed the offense of aggravated robbery (R.C. 2929.04[A][7]).

{¶ 33} With respect to the nature and circumstances of the crime, the facts demonstrate that during the five-month period between November 1990 and March 1991, appellant committed five brutal, calculated murders in four different states. Appellant perpetrated each murder simply as a means to facilitate his trip across the country. Daron, a devoted father and religious man, lost his life because he stopped to offer appellant some assistance. After being driven to his chosen destination more than twenty miles out of Daron's way, appellant fired two shots into Daron's chest, stole his wallet and personal belongings, and ultimately disposed of the body in a secluded area near the Ohio River. Appellant thereafter used the stolen money, credit cards and vehicle to make his way to Oregon, where he continued his killing spree.

{¶ 34} The defense presented the videotaped testimony of three witnesses during the mitigation hearing concerning appellant's history, character, and background. Louise M. Corcoran, a long-time family friend, testified to the difficult childhood appellant experienced as a result of the repeated abuse and rejection inflicted on him by his father and later by two stepfathers. Olivia Priest, who was once appellant's stepmother and later his girlfriend, testified that she knew appellant as a kind, caring and sometimes overly protective individual. She also acknowledged alcohol and drug abuse by appellant on numerous occasions. Finally, Margaret Berck of the Juneau office of the Alaska Public Defender Agency testified that an Alaska judge had sentenced appellant to ninety-nine years' confinement for the murder of Jefferson Diffee. She further stated that appellant

would be required to serve a minimum of sixty-six years before being considered for any type of early release.

{¶ 35} Mary Slayback, appellant's maternal aunt, testified during the mitigation hearing concerning the abusive environment in which appellant was raised. She also reported that appellant had lived with her in her home for a period of time during his early twenties. Slayback described appellant as cooperative, thoughtful and kind.

{¶ 36} The defense psychologist, Dr. Nancy Schmidtgoessling, testified that appellant's performance on a number of psychological tests indicated an average range of intelligence with no signs of organic impairment. She confirmed that appellant spent his childhood in an environment of dysfunctional, abusive relationships where he was frequently abused, humiliated, rejected and ultimately abandoned by his father and stepfathers. As a result of his background, appellant carries extreme feelings of worthlessness, distrust and suppressed rage. Dr. Schmidtgoessling further determined that while appellant exhibits a mixed personality disorder with narcissistic and antisocial tendencies, he does not suffer from a "mental disease or defect," as that phrase is used in R.C. 2929.04(B)(3). The effects of appellant's personality disorder have been further compounded by his abuse of alcohol and other substances. Finally, Dr. Schmidtgoessling testified that appellant's killing spree would likely have continued but for his arrest in Alaska.

{¶ 37} Appellant chose to make an unsworn statement to the court during the mitigation hearing in which he described various childhood memories, both positive and negative. He recounted instances of physical and emotional abuse that he and his mother suffered because of his father and stepfathers. He spoke of his abuse of alcohol and drugs, which began in high school, led to his discharge from the military, and contributed to everything "falling apart" in November 1990 just before he killed Donald Nutley. Appellant concluded his statement with

expressions of sorrow for the person he has become and a request for a life sentence so that he could have an opportunity to work with other children of abuse.

{¶ 38} The prosecution presented six witnesses during the mitigation phase, each a law enforcement officer. Five of the six were police officers from the states in which appellant had committed the murders. Those officers identified the victims that had been found in their respective jurisdictions and related details of the subsequent investigations which led them to appellant. The sixth witness was Larry Ott, a special agent with the Federal Bureau of Investigation. Agent Ott and two of the state police officers, Detective Thomas Nelson and Investigator Walter Bowman, testified that appellant cooperated with the police by confessing to the murders and providing information as to where the bodies and various evidentiary items could be located.

{¶ 39} Upon review of all the evidence offered as mitigation, we find that little or no weight should be given to any of the statutory mitigating factors. The facts in this case fail to demonstrate that Daron in any way "induced or facilitated" the offense within the meaning of R.C. 2929.04(B)(1). Nor do the facts indicate that appellant acted under "duress, coercion, or strong provocation," as set forth in R.C. 2929.04(B)(2). The defense psychologist's testimony indicates that while appellant exhibits a personality disorder, he does not suffer from a mental disease or defect contemplated by R.C. 2929.04(B)(3). Appellant's age of twenty-seven at the time of the murder negates R.C. 2929.04(B)(4). Given appellant's previous felony and misdemeanor convictions, we assign no weight to appellant's claim that he lacks a significant criminal history under R.C. 2929.04(B)(5). No other offenders were involved in the murder, thereby rendering R.C. 2929.04(B)(6) inapplicable. Mitigating factors which fall under R.C. 2929.04(B)(7) include appellant's abusive childhood, his cooperation with law enforcement officers, and his alcohol and substance abuse, but each warrants little weight. We therefore find

that the substantial aggravating circumstances established by competent evidence outweigh the mitigating factors beyond a reasonable doubt.

C

**{¶ 40}** Finally, we are required, pursuant to R.C. 2929.05(A), to consider whether the sentence imposed in this case was excessive or disproportionate. We have upheld death penalties in other cases involving aggravated murders which involved the purposeful killing of or attempt to kill two or more persons, *e.g.*, *State v. Lorraine*, *supra*, 66 Ohio St.3d 414, 613 N.E.2d 212; *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483; *State v. Coleman* (1989), 45 Ohio St.3d 298, 544 N.E.2d 622; *State v. Sowell*, *supra*, 39 Ohio St.3d 322, 530 N.E.2d 1294; *State v. Brown* (1988), 38 Ohio St.3d 305, 538 N.E.2d 523; and cases where the aggravated murder was committed in the course of an aggravated robbery, *e.g.*, *State v. Green* (1993), 66 Ohio St.3d 141, 609 N.E.2d 1253; *State v. Cook* (1992), 65 Ohio St.3d 516, 605 N.E.2d 70; *State v. Brown*, *supra*; *State v. Byrd* (1987), 32 Ohio St.3d 79, 512 N.E.2d 611. Therefore, we find that the sentence of death in this case is neither excessive nor disproportionate.

**{¶ 41}** Accordingly, we affirm appellant's convictions and death sentence. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

WRIGHT, J., concurs in judgment only.

—————————