DECISION AND JUDGMENT ENTRY
This case is on appeal from the July 31, 2000 judgment of the Lucas County Court of Common Pleas, which sentenced appellant, Donald Cotterman, following his conviction on charges of violating R.C.2907.02(A)(2), rape, and R.C. 2907.05(A)(1), gross sexual imposition. Upon consideration of appellant's following assignments of error, we affirm.
 "I. DEFENDANT'S CONVICTION FOR GROSS SEXUAL IMPOSITION WAS BASED UPON INSUFFICIENT EVIDENCE.
 "II. DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 "A. DEFENDANT'S TRIAL COUNSEL FAILED TO RENEW REQUESTS FOR COMPETENCY EVALUATION OF PROSECUTION WITNESS
 "B. DEFENDANT'S TRIAL COUNSEL'S FAILURE TO OBJECT TO EVIDENTIARY ISSUES WAS PLAIN ERROR AFFECTING DEFENDANT'S SUBSTANTIAL RIGHTS.
 "III. THE TRIAL COURT ERRED SENTENCING DEFENDANT TO CONSECUTIVE TERMS."
Appellant was tried on four counts of an eight count indictment, the remaining four having been dismissed prior to trial; specifically, attempt to commit rape (R.C. 2923.01); rape (R.C. 2907.02(A)(2)); rape (R.C. 2907.02(A)(2)); gross sexual imposition (R.C. 2907.05(A)(1)). He was convicted of one count of rape and gross sexual imposition.
At sentencing, appellant was found to be a habitual sex offender under R.C. 2950.01(B), but not a sexual predator under R.C. 2950.01(E). The court further found that appellant is not amenable to community control and that prison is consistent with the purposes of R.C. 2929.11 and not disproportionate to the seriousness of his conduct or the danger he poses to the community. The court further found that the harm appellant caused was great or unusual and that his criminal history requires consecutive sentences. Finally, the court imposed the greatest prison term permissible to avoid demeaning the seriousness of the crimes and to adequately protect the public. He was sentenced to eight years imprisonment for Count 2 and twelve months imprisonment for Count 4, a total consecutive term of nine years.
At the opening of trial, appellant's counsel inquired about the court's ruling on appellant's pending motion in limine requesting a voir dire to determine the competency of the two victims. The motion had also requested a psychiatric examination of the victims, but the issue was avoided by the state's dismissal of four counts of the indictment relating to the mental capacity of the victims. The state objected to the remainder of the motion because it was filed the day before trial, which was actually three days after the original date set for trial. The court indicated that it denied the motion on the ground that it was the trier of fact in the case and would consider the competency of the witnesses at the time their testimony was given.
The following evidence was submitted at appellant's bench trial. The first victim, a mentally impaired adult, testified that while she was home alone, appellant came into her bedroom and forced her to have sexual intercourse. She did not tell anyone what he had done because she was scared about how he would react and he told her not to tell anyone. She further testified that over the course of the remainder of the year, appellant raped her an additional ten to twenty times.
On direct examination, the first victim identified a letter she had signed on January 4, 2000, in which she stated that appellant had never raped her and that she had made up the story because her uncle had threatened to take her away from her mother and father if she did not do what he told her to do. She testified that her mother had asked her to sign the statement. The first victim did not know who wrote the statement. She signed the statement only because her mother had asked her to do so. However, the first victim testified that this statement was not the truth and no one threatened to take her away from her parents.
The second victim, a mentally impaired adult, was able to testify to certain matters about herself, but initially testified that she did not know why she was in court to testify and could not recall ever having talked to the police. However, she immediately identified one of the officers in the courtroom as an officer she talked to about appellant.
The state then showed the second victim state exhibit No. 2. She testified that she did not write the document nor sign it. She read the statement into evidence. It appeared to be her statement that she had been instructed by her uncle to make up the allegations against appellant. The second victim then provided the court with a signature sample. Afterward, the state began to question her as to whether the statements in the document were true. She first testified that they were not true, then that a portion of it was true.
The second victim was then questioned about being in the bathroom with appellant. She stated that he made her touch his penis and that he also touched her breasts. She testified that she was disgusted by the conduct and she tried to get him to stop, but he would not. He told her not to tell anyone about the incident because they would not believe her. She told her mother what happened two days later. The second victim then testified that her uncle had not told her to say these things. She also testified that she knew that she was to tell the truth when she testified.
On cross-examination, the second victim again testified that the written statement that her uncle had told her to accuse appellant was true. However, she went on to state that the touching occurred when it was warm outside and that it happened after she first met appellant three years prior to trial.
The mother of the victims testified that she had made an agreement with the prosecution that she would testify against appellant in exchange for having her felony conviction for intimidating a witness reduced and her sentence commuted to probation. She testified that the second victim told her in either March or August 1999, that appellant had done something to her. The mother also testified that the first victim told her in October what appellant had done. The mother also testified that these two daughters, do not have the ability to tell a lie.
After the mother reported the crimes to the police in December, she attempted to retract her allegations and testified at appellant's parole hearing that he had not done anything wrong. She also testified that appellant dictated and her other daughter, appellant's spouse, typed the statements signed by herself and her victimized daughters recanting their allegations. The mother also testified that the retraction statements were false.
Detective Miller testified when she interviewed the victims and that they were both able to remember certain dates of events. However, neither could provide a specific date on which the crimes occurred. Miller was not surprised, however, because in the thousands of interviews she had conducted regarding sexual abuse, she commonly encountered situations where the time frames for the crimes were not consistent. She also testified that such victims often recant their allegations.
Appellant presented the following evidence in his defense.
Debra Large, a Toledo Police Officer, testified that on January 3, 2000, the mother of the victims and her daughter who was married to appellant came to the record bureau seeking to retract the mother's prior allegations against appellant.
Appellant's spouse testified that she was also charged with intimidating a witness and remains to be sentenced. She testified regarding appellant's work schedule and the time frames within which she and appellant lived with her mother. Her testimony implied that appellant had little opportunity to be alone with her sisters. She also testified that she did not prepare state's exhibit No. 3 and never saw it before her mother told her to give it to appellant's parole officer.
We begin by addressing appellant's second assignment of error first. Appellant contends that his appointed counsel rendered ineffective assistance because he failed to assert objections regarding evidentiary issues. Appellant argues that his counsel should have: 1) renewed his motion in limine during trial regarding the competency of the second victim to testify; and 2) objected to the reading and admission of the state's exhibit No. 2 when the first victim admitted that parts of it were true.
Appellant bears the burden of proving his claim of ineffective assistance of appointed counsel because an attorney is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160, 174, certiorari denied (1990), 498 U.S. 1017, and State v. Smith (1985), 17 Ohio St.3d 98,100. To meet this burden of proof, appellant must show that: (1) there was a substantial violation of the attorney's duty to his client, and (2) the defense was prejudiced by the attorney's actions or breach of duty in that there is a reasonable probability of a different result in the case. Strickland v. Washington (1984), 466 U.S. 668, 687-689 and Statev. Smith, supra. The ultimate test to determine whether an accused had effective retained counsel "is whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, paragraph four of the syllabus.
While the reasonableness of the attorney's conduct must be considered in light of the facts of each case, some general rules have arisen from case law. One general rule is that reasoned tactical decisions cannot form the basis for a claim of ineffective assistance of counsel. Statev. Hamblin (1988), 37 Ohio St.3d 153, 157, certiorari denied (1988),488 U.S. 975. An exception to this rule exists only where the trial tactic is "such a deviation from the norm that ordinary trial counsel would scoff at hearing of it, * * *." State v. Burgins (1988),44 Ohio App.3d 158, 160-161.
Appellant first contends that his appointed counsel improperly failed to renew his motion in limine during trial regarding the competency of the second victim to testify. He argues that once the second victim could not answer the state's direct questioning, the issue of her competency should have been addressed.
While the court initially stated that it was denying the motion inlimine, it really indicated that the motion was continued until the point when the testimony was given. The court stated that it would determine the competency of the witnesses when they began to testify. Since this was a bench trial, we find that the court was well within its discretion to listen to a witness's entire testimony and observe their demeanor before determining competency to testify to the truth.
Second, appellant contends that his appointed counsel should have objected to the state's use of state's exhibit No. 2. He contends that because his counsel did not object to the competency of the second victim, the state was then permitted to use a document which contained double hearsay and lacked proper foundation to establish the elements of the crime. He further argues that we should evaluate this error under the plain error standard, but we disagree. The issue in this case is whether appellant's appointed counsel had a duty to make the objection and if so, whether the failure to do so resulted in prejudice to his defense.
First, there is a presumption in a criminal bench trial that the judge will only consider relevant evidence. State v. Fautenberry (1995),72 Ohio St.3d 435, 439, certiorari denied (1995), 516 U.S. 996, and Statev. Post (1987) 32 Ohio St.3d 380, 384, certiorari denied (1988),484 U.S. 1079.
Second, we address the issue of whether it was proper for the state to use this exhibit during direct examination of the second victim after she seemed unable to understand why she was there to testify. If the document was a statement made by the second victim, it should not have been read into evidence until after a proper foundation had been laid. However, through her testimony, the state was able to prove that this was not the second victim's statement under R.C. 801(A). She testified that she neither prepared nor signed the document. Therefore, the document did not contain hearsay. The document was not used to refresh the second victim's recollection under Evid.R. 612, was not a past recollection recorded under Evid.R. 803(4), was not a prior statement under R.C. 801(D). Therefore, appellant's counsel could not have objected to the introduction of the document into evidence under any of these rules. The only possible objection was the relevancy of the document. But later evidence presented indicated that the document was drafted by appellant. Since this was a bench trial, we find that the court could properly evaluate the admissibility of the evidence.
Even if there had been a basis for objection, we find that appellant's counsel would have a tactical reason for not objecting. If the document was true, it was evidence that appellant did not commit the crime alleged.
Finally, we find that appellant has failed to demonstrate how introduction of the document into evidence prejudiced his case. There was no substantive evidence contained in the document that was prejudicial to appellant. Furthermore, appellant's allegation that it is highly unlikely that the second victim would have testified against appellant had she not read the document is purely hypothetical speculation.
Thus, we find appellant's second assignment of error not well-taken.
In his first assignment of error, appellant contends that his conviction for gross sexual imposition was based upon insufficient evidence.
The standard for determining whether there is sufficient evidence to support a conviction is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,386, reconsideration denied (1997), 79 Ohio St.3d 1451. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Id.
The elements of the crime of gross sexual imposition are set forth in R.C. 2907.05(A)(1):
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
Appellant contends that the evidence indicates that the second victim testified that nothing happened to her. Furthermore, he contends that the mother never testified as to any specific conduct by appellant toward the second victim. He argues that only Detective Miller indicated that the mother had said that the second victim had been sexually offended. He believes that witnesses only eluded to some conduct, but never testified with enough specificity to constitute sufficient evidence to convict him.
This argument, however, is based entirely upon the premise that his second assignment of error has merit, which we have found not well-taken. The second victim did testify during direct examination to the facts which proved the elements of the offense. Appellant's first assignment of error is not well-taken.
In his third assignment of error, appellant argues that the trial court erred when it sentenced appellant to consecutive terms of imprisonment.
Pursuant to former R.C. 2929.14(E)(3), effective May 17, 2000, the trial court could require multiple sentences to be served consecutively if:
 "* * * the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
Appellant argues that the trial court did not comply with the statute because there was no evidence presented from which it could have found that the victims were harmed in this case.
As we recently held in State v. Jackson (Feb. 5, 1999), Erie App. No. E-97-116, unreported, the court need not specifically state the facts which support a finding that the statutory requirements have been met. However, the court must have either recited the relevant facts either in the sentencing judgment, or at least during the sentencing hearing, which would justify the imposition of consecutive sentences.
In this case, the court stated in the judgement that it found that "[t]he harm caused was great or unusual" and that appellant's "criminal history requires consecutive sentences." At the sentencing hearing, the court also noted that the entire family was affected by appellant's crimes and that consecutive sentences were necessary because of the danger that his conduct posed. While the court did not identify the specific type of harm caused in this case, it is clear from the court's entire sentencing judgment and comments during the hearing, that the court's decision was based upon the mental condition of the victims, the family relationship appellant had with the victims, and the change in the entire family's relationships after appellant's criminal conduct was discovered. Therefore, we find that in this case, the trial court did make the necessary factual findings to support the imposition of consecutive sentences. Appellant's third assignment of error is not well-taken.
Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 __________________________ Peter M. Handwork, J.
James R. Sherck, J. CONCUR.
Melvin L. Resnick, J. CONCURS IN JUDGMENT ONLY.