JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Sean Kay, brings this appeal challenging his conviction and sentence for aggravated vehicular homicide. After a thorough review of the record and for the reasons set forth below, we affirm.
 {¶ 2} On January 12, 2007, the Cuyahoga County Grand Jury returned a twelve-count indictment against appellant, including one count of murder, in violation of R.C. 2903.02(B); five counts of felonious assault, in violation of R.C. 2903.11(A)(2); one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2); and five counts of attempted aggravated vehicular homicide, violations of R.C. 2923.02
and R.C. 2903.08(A)(2). Appellant waived his right to a jury trial, and the matter proceeded to a bench trial on July 9, 2007.
 {¶ 3} The state called eight witnesses at trial: paramedic Brian Summers; Officer Ryan Tieber; victims Amanda Koczwara, Natasha Farrell, Charles Lorzing, and Robert Krohn; accident reconstruction expert, Choya Hawn; and the decedent's daughter, Suzanne Durczak. The defense called only appellant to testify.
 {¶ 4} The following testimony was presented by the state's witnesses. Shortly before 2:00 p.m. on December 28, 2006, Amanda Koczwara, Natasha Farrell, and Amanda's four-year-old sister, Karah Cardamone, were driving in Amanda's grandmother's white Plymouth minivan along State Route 82. Amanda was driving the minivan as they left a doctor's appointment for Karah. As they drove along Route 82, Amanda and Natasha observed appellant at the intersection of Route 82 and Cherry Hill, driving a green Ford Expedition SUV. Appellant and Amanda had been boyfriend and *Page 4 
girlfriend in an on-again off-again relationship over the past three years and had a three-year-old son together.
 {¶ 5} Appellant began to follow Amanda in his SUV down Route 82 and onto the entrance ramp to northbound Interstate 77. While he was following her, he called Amanda on her cell phone two times; Amanda testified that she answered only the second call. She testified that appellant called her a liar and a b[****], and that he was very angry with her. Appellant continued to follow her minivan very closely up the entrance ramp to the highway and proceeded to pull alongside her vehicle in the left lane as she drove in the right lane. Both Amanda and Natasha testified that appellant made eye-contact with Amanda and then used his middle finger in an obscene gesture towards her. Amanda and Natasha were very afraid that appellant was driving so close to the minivan, and they feared the two cars would get into an accident.
 {¶ 6} Appellant then proceeded to drop back in the left lane so that the front of his SUV was near the middle-to-rear driver's side of Amanda's minivan. Then appellant swerved his SUV towards her vehicle and hit the side of the minivan. The minivan careened out of control on two tires into the center median strip, where it came to a stop. Upon impact with the minivan, appellant's SUV spiraled through the air, across the median, where it landed on top of a Chevy Malibu being driven by Gerald Durczak, which was traveling south on I-77. Mr. Durczak was killed instantly.
 {¶ 7} Charles Lorzing was driving north on I-77 in his vehicle. He testified that he was driving behind appellant's SUV when he saw the SUV *Page 5 
swerve abruptly into the white minivan. Mr. Lorzing stated that he did not see appellant signal a lane change, but he could see the passenger side of the SUV as it hit the minivan.
 {¶ 8} Robert Krohn was driving on I-77 in his vehicle at the time of the accident. He testified that he witnessed appellant's vehicle spiraling out of control and that it landed very near his vehicle. Mr. Krohn's car sustained $11,000 in property damage due to the debris that was thrown when appellant's SUV finally came to a stop.
 {¶ 9} Choya Hawn testified that his expertise is in accident reconstruction. His investigation findings showed that appellant's SUV hit the minivan between the driver's door and the rear tire well and again near the rear of the minivan. The findings also show that appellant's tires were turned toward the minivan at the point of impact.
 {¶ 10} Ms. Durczak testified that she was watching television when the local news reported the accident. She stated that she learned of her father's death shortly thereafter. She further testified that her father was a hard-working family man.
 {¶ 11} At the close of the state's case, appellant made a Crim. R. 29 motion specifically as to Count one for murder. The court granted the motion as to the murder charge, two counts of felonious assault, and two counts of attempted aggravated vehicular homicide.
 {¶ 12} The defense called appellant to testify. Appellant told the court that he and Amanda had become engaged over the previous Thanksgiving holiday. On December 28th, appellant was home from college for the holidays, and he and Amanda *Page 6 
were planning to get together later that afternoon. Appellant testified that Amanda had told him that she and her mother were taking her sister, Karah, to a doctor's appointment at 3:30 p.m. on December 28th. Appellant was driving his SUV on State Route 82 when he observed Amanda's minivan at the doctor's office at some time just after 1:45 p.m. that day, and he believed she had lied to him about the appointment. He became angry and distraught over this perceived lie, and he began to follow Amanda, Natasha, and Karah in their vehicle along Route 82 and onto the entrance ramp to I-77 north. Appellant claims Amanda called his cell phone first, then he called her phone. He admits he called her a liar and expected her to give him an explanation for why she lied to him.
 {¶ 13} Appellant further testified that he drove his SUV in the left lane alongside the minivan Amanda was driving in the right lane of I-77. He wanted to get her attention, and then he planned to pass her vehicle and exit the highway at the next opportunity, the Wallings Road exit. Appellant then pulled his vehicle back towards the rear of the minivan and swerved toward it with the intention of scaring Amanda. He testified that he did not intend to hit her, but he did purposely try to scare her. The statement appellant gave to the police corroborated his testimony.[1]
 {¶ 14} On July 12, 2007, the court found appellant guilty on Counts two, three, and four for felonious assault, and Count seven for aggravated vehicular *Page 7 
homicide. The court found appellant not guilty on Counts eight, nine, and ten. On August 14, 2007, the court sentenced appellant to two years imprisonment on each felonious assault conviction, to run concurrently, and five years for aggravated vehicular homicide, to run consecutively to the two years on the felonious assault convictions. Appellant's total sentence was seven years in prison, a period of statutorily-imposed post-release control, and a lifetime suspension of his driver's license.
 Review and Analysis {¶ 15} Appellant timely filed this appeal and asserts three assignments of error.
 Admissibility of Victim Impact Evidence {¶ 16} "I. Victim impact evidence was admitted in violation of the Sixth and Fourteenth Amendments of the federal Constitution."
 {¶ 17} In his first assignment of error, appellant argues that the court erred in allowing the testimony of Suzanne Durczak, the decedent's daughter, at trial. He argues that her testimony should have been excluded because it did not relate to the circumstances surrounding her father's death, but was designed to "arouse the sympathy of the fact finder." There is no merit in this argument.
 {¶ 18} We note that the appellant failed to object to the testimony regarding the above-stated evidence; therefore, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995), 102 Ohio *Page 8 
App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166, 1996-Ohio-100,661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83,1995-Ohio-171, 656 N.E.2d 643.
 {¶ 19} Appellant also claims that his trial counsel was ineffective for not objecting to the testimony, arguing there was a reasonable probability the testimony would have been excluded if he had.
 {¶ 20} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Brooks (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 21} Appellant has not demonstrated that defense counsel's representation was seriously flawed or deficient because victim impact evidence is not automatically inadmissible. See State v.Fautenberry (1995), 72 Ohio St.3d 435, 440, 1995-Ohio-209,650 N.E.2d 878 ("Evidence which depicts both the circumstances surrounding the commission of the murder and also the impact of the murder on the victim's family may be admissible during both the guilt and the sentencing phases."). *Page 9 
 {¶ 22} Appellant has failed to demonstrate, or even suggest, how the outcome of this trial would have been different had the trial court excluded Ms. Durczak's testimony under either a plain error standard of review or under the Strickland standard.
 {¶ 23} This case was tried before a judge, not a jury. At a bench trial, the court is presumed to eliminate any inadmissable testimony in arriving at a conclusion. A reviewing court must presume that the trial court applied the law correctly. State v. Coombs (1985),18 Ohio St.3d 123, 125, 480 N.E.2d 414, citing State v. Eubank (1979),60 Ohio St.2d 183, 398 N.E.2d 567.
 {¶ 24} Given the testimony of the other witnesses at trial, this court had sufficient eyewitness testimony on which to rely to reach its verdict. If anything, the error complained of was harmless as it related to the convictions. Where there is no reasonable possibility that the unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. State v. Lytle (1976),48 Ohio St.2d 391, 358 N.E.2d 623, paragraph 3 of the syllabus, vacated on other grounds in (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 25} Appellant's first assignment of error is overruled.
 Reckless Versus Negligent {¶ 26} "II. There was insufficient evidence that the appellant acted recklessly versus negligently in committing the aggravated vehicular homicide."
 {¶ 27} In his second assignment of error, appellant argues that there was insufficient evidence that he acted recklessly in order to sustain a conviction for *Page 10 
aggravated vehicular homicide. He claims that his conduct could be, at most, considered negligent under the statutory definition. We do not find any merit in this argument.
 {¶ 28} In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 29} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph 2 of the syllabus.
 {¶ 30} More recently, in State v. Thompkins (1997), 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 31} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. *Page 11 
Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486,55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v.Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed. 2d 652,663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560." Id. at 386-387.
 {¶ 32} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence that goes to all the essential elements of the case.Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 33} R.C. 2903.06(A)(2) states: "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, water craft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy * * * (2) In one of the following ways: (a) Recklessly;
 {¶ 34} The trial court found appellant guilty of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2), thereby demonstrating that the court concluded that appellant's conduct was reckless. R.C. 2901.22(C) states: "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." *Page 12 
 {¶ 35} Appellant contends that his conduct of swerving towards the minivan in an attempt to scare Amanda was negligent, not reckless. He argues there was no evidence that his conduct was likely to cause the death of Mr. Durczak; however, he concedes that, had any of the passengers of the minivan been killed, his conduct might be considered reckless.
 {¶ 36} This court is not required to find that appellant's conduct was reckless specifically as to the decedent in order to find him guilty under this section of the statute. There was sufficient evidence before the court to find that appellant disregarded a known risk that purposely steering his SUV towards and ultimately into the side of another vehicle at speeds of 55 to 60 miles per hour on a major highway was likely to cause injury. The fact that appellant did not know his conduct would specifically result in Mr. Durczak's death is irrelevant to the court finding that he acted recklessly. Appellant intended to scare Amanda and the other passengers of the minivan, thus disregarding a known risk that his actions could cause the death of another, be it the passengers of the minivan or, as is the case, an innocent man.
 {¶ 37} Furthermore appellant's own testimony supports a finding of reckless behavior on his part. He admits that he intended to scare Amanda by swerving towards her car. There is evidence that part of his front tire made contact with the driver's side of the minivan, indicating appellant was turning in towards Amanda's minivan. There is no evidence that appellant attempted to signal a lane change or slow down, or that the minivan left its lane or changed speed. *Page 13 
 {¶ 38} Clearly, there was sufficient evidence of all elements of the charge of aggravated vehicular homicide. Appellant's second assignment of error is overruled.
 Sentence {¶ 39} "III. The appellant's sentence of five years for a third degree felony aggravated vehicular homicide, cumulative sentence of seven years and lifetime driver's license suspension is inconsistent with and disproportionate to similar crimes committed by similar offenders in violation of R.C. 2929.11; and is otherwise contrary to law."
 {¶ 40} In his third assignment of error, appellant argues that his sentence of five years on Count seven; two years each on Counts two, three and four, to run consecutively to the five-year sentence; as well as a lifetime suspension of his driver's license is disproportionate to sentences of similar offenders. He also argues that his sentence is contrary to law. We find no merit in his argument.
 {¶ 41} Sentencing appellant to the maximum term for aggravated vehicular homicide and a minimum, yet consecutive, term for felonious assault does not make the sentence contrary to law. Under R.C. 2929.11(B), "a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 42} As a result of the Ohio Supreme Court's ruling in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, trial courts have full discretion to impose a prison *Page 14 
sentence within the statutory range and are no longer required to make findings or state reasons for imposing more than the minimum sentences.Foster, supra. Under Foster, the trial judge did not have to make findings before imposing consecutive sentences. We also do not find any inconsistency in the court's decision to sentence appellant to the minimum penalty on the felonious assault convictions and the maximum penalty on the aggravated vehicular homicide conviction, given the harm caused and its impact on the decedent. Both sentences are within the proper sentencing range; therefore, a prison term of seven years is appropriate and not contrary to law.
 {¶ 43} Appellant also argues that offenders who have been convicted of similar offenses have not received such harsh sentences. He cites several cases in which a defendant convicted of aggravated vehicular homicide received less prison time than he did; however, "R.C. 2929.11(B) does not require the trial court to engage in an analysis on the record to determine whether defendants who have committed similar crimes have received similar punishments." State v. Hunt, Cuyahoga App. No. 81305, 2003-Ohio-175.
 {¶ 44} Appellant did not raise this issue with the trial court in order to preserve it for appeal. See State v. Woods, Cuyahoga App. No. 82789, 2004-Ohio-2700 (when defendant challenges consistency in sentencing, "the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal."); State v. Marshall, Cuyahoga App. No. 89551, 2008-Ohio-1632.
 {¶ 45} Appellant here raises this issue for the first time on appeal, and this court will not decide it. Therefore, appellant's third assignment of error is overruled. *Page 15 
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and MARY JANE BOYLE, J., CONCUR
[1] Appellant's statement at the Broadview Heights Police Department reads: "I was driving down RT 82 and saw Amanda a [sic] gave her the finger. We proceed to get on 77. I was going to pass her and got next to her. I then swerved to the right with the intent of scarying [sic] her. The next thing I knew I was in the back seat of my crashed truck. I did swerve on purpose towards her van." (Statement of Sean Kay, December 28, 2006.) *Page 1